**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re** | **:** | **Chapter 7** |
| **Ronald D. Gigliotti and Carol A. Gigliotti,** | **:** | |
| **Debtors.** | **:** | **Case No. 11-18910(JKF)** |
| | | |
| **In re** | **:** | **Chapter 7** |
| **John C. Gigliotti,** | **:** | |
| **Debtor.** | **:** | **Case No. 12-11986** |
| | | |
| **Daniel R. Black and Caryn Black,** | **:** | |
| **Plaintiffs,** | **:** | |
| **v.** | **:** | |
| **Ronald D. Gigliotti and John Gigliotti,** | **:** | |
| **Defendants.** | **:** | **Adversary No. 12-0449**<br>**Adversary No. 12-0471** |

## <u>MEMORANDUM OPINION</u>

BY: Jean K Fitzsimon
    United States Bankruptcy Judge

### I. Introduction

The deposit funds of Plaintiffs Daniel and Caryn Black (the "Blacks" or the

"Plaintiffs") for the purchase of a home that they never occupied were not

returned to them as promised.  The Plaintiffs sued the Defendants' company Gigliotti Avignon Associates, L.L.P. ("Gigliotti Avignon") in state court and received a judgment.  The Plaintiffs, however, could not collect due to the company's insolvency.  In this adversary proceeding, the Blacks seek to recover on the state court judgment from the Defendants Ronald and John Gigliotti (the "Gigliottis" or the "Defendants") based on a theory of piercing the corporate veil. The Plaintiffs also seek to hold any debt owed to them nondischargeable pursuant to sections 523(a)(2) and (a)(4) of the Bankruptcy Code.

The parties filed cross-motions for summary judgment.  Based on the available evidence and an examination of the law, the Court concludes that the Plaintiffs, who maintain the burden of proof, have failed to put forth sufficient evidence to support their cause of action for piercing the corporate veil. Therefore, the Plaintiffs' Motion will be denied and the Defendants' Motion will be granted.

## II. Factual and Procedural Background

## A.  Procedural History

Debtors Ronald ("Ronald") and John ("John") Gigliotti, who are brothers, filed separate Chapter 7 bankruptcy petitions on November 18, 2011 and March 1, 2012, respectively.[1]  On June 15, 2012, Plaintiffs Daniel and Caryn

---

[1]  Ronald filed with his wife, Carol.

2

Black filed an initial seven-count complaint in Ronald's bankruptcy, naming as

Defendants Ronald, John, their deceased father Christopher, Gigliotti Avignon,

the Gigliotti Group, and John or Jane Doe (adv. no. 12-449) alleging, *inter alia*,

fraudulent conveyance, fraud, and conversion.  The identical complaint was filed

on July 2, 2012 in John's bankruptcy (adv. no 12-471).[2]

Following Defendants' Motion to Dismiss (doc. #5), and for reasons stated

on the record in open court at a hearing held on November 7, 2012, the Court

issued an Order dismissing the seven counts of the adversary complaint but

permitting the Plaintiffs to file an amended complaint stating causes of action for

1) piercing the corporate veil to enforce a judgment the Plaintiffs received against

Gigliotti Avignon in state court (discussed below); and 2) nondischargeability of

the debt, if any, pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).  Doc. #15.

On December 5, 2012, the Plaintiffs, as permitted, filed a three-count

Amended Complaint (the "AC"), seeking to pierce the corporate veil to impose

personal liability on the Defendants for the state court judgment instituted against

Gigliotti Avignon and to deny dischargeability pursuant to §§ 523(a)(2) and (a)(4).

Doc. #18.[3]  The Defendants answered the AC on December 27, 2012.  Doc. #19.

Following consensual resolution of certain scheduling and discovery disputes, a

---

[2] The proceedings have followed the same history; all pleadings have been filed in each adversary.  For ease of reference, only the docket numbers and dates for adversary no. 12- 449 will be provided and the two adversary proceedings will be referred to in the singular.

[3] The AC was only filed against Ronald and John.

3

hearing on the parties' cross-motions for summary judgment (which were filed on

June 5, 2013 (doc. #28) and August 23, 2013 (doc. #48)) was held on

October 16, 2013 (the "October Hearing").

Prior to taking the matter under advisement and due to the ongoing

logistical disputes between the parties, the Court issued an Order on October 29,

2013, setting forth which post-motion briefs and submissions it would consider in

deciding this matter.  Doc. #62 (the "Logistics Order").  The Plaintiffs' Motion to

Reconsider the Logistics Order - specifically the portion of the Order denying the

consideration of their post-hearing brief - was denied on November 18, 2013.

Doc. #67.  For reasons stated on the record in open court on January 8, 2014,

the Court also denied a tardy Motion to Compel filed by the Plaintiffs (the "Motion

to Compel"), which was submitted over four months after discovery closed and

three months after the Plaintiffs sought summary judgment.  Doc. #79.  A Motion

to Reconsider the denial of the Motion to Compel was denied by the issuance of

an Order on February 4, 2014.  Doc. #84.

## B.  Factual History

Ronald and John, along with their deceased father (Christopher), worked

as real estate developers and conducted business through their limited liability

companies, Gigliotti Avignon, Gigliotti Avignon, Inc., and the Gigliotti Group, Inc.

(the "Group").  AC at 1,3.  The Gigliottis have been in the residential building

business for over 85 years.  Defendants' Motion for Summary Judgment ("Defs.'

4

Mtn") at 6.  Ronald is the President of Gigliotti Avignon and the Group and John is the Vice President of these Companies.  Id.  Each brother owns a third of each company.  Id.

On June 8, 2003, the Blacks, who were married at the time, entered into an agreement (the "Contract") to purchase from Gigliotti Avignon a lot and home for $849,900 (the "Property") in its Quarry Valley Farms development, which is located in New Hope, PA.  AC at 3; Defs.' Mtn at 6-7; Ex. B to Pls.' Mtn.  The Blacks placed $102,810 in escrow to secure the purchase of the Property.  AC at 3; Defs.' Mtn at 7.[4]  Prior to construction of the Property, in December 2004, the Plaintiffs began divorce proceedings.  AC at 4.

Given the Plaintiffs' pending divorce, the parties agreed to build and market the home (without the Blacks' custom choices) to a third party buyer.  AC at 4.  If a buyer was found, the Blacks would receive their deposit as well as half of any net profits.  (The "Agreement").[5]  Id.  On December 19, 2004, the Property was sold by the Gigliottis for "at least" $123,000 more than the Blacks agreed to pay for it.  Id. at 4; Plaintiffs' Motion for Summary Judgment ("Pls.' Mtn") at 9.

The fact that the Blacks did not complete the purchase of the Property led to allegations on both sides.  Gigliotti Avignon advised the Blacks that they were in breach of the Contract and that, accordingly, it would be retaining the couple's

---

[4] This sum consisted of $89,490 as a general deposit and $13,320 for custom options.  AC at 4.

[5]  This was a verbal agreement.  Affidavit of Daniel Black at 11 (Ex. "E" to Defs.' Mtn).

5

deposit.  AC at 4-5; Defs.' Mtn at 7.[6]  And on December 6, 2005, the Blacks sued

(only) Gigliotti Avignon in the Bucks county Court of Common Pleas, seeking

damages for: 1) specific performance of the Agreement; 2) breach of the

Agreement; 3) fraud; and 4) breach of the Unfair Trade Practices & Consumer

Protection Law.[7] (The "State Court Action") see Ex. B to Pls.' Mtn.; AC at 4-5.

The Blacks prevailed in the State Court Action; on October 22, 2010, State Court

Judge John Rufe entered a judgment against Gigliotti Avignon (only) in the

amount of $151,276.62 (including fees, the "State Court Judgment").  See "Order

of Final Judgment," attached as part of Ex.B to Pls.' Mtn.

Approximately three months after the State Court Judgment was entered,

the Plaintiffs were informed by Gigliotti Avignon's counsel that the company was

insolvent; counsel offered the Blacks $5,000 to settle the judgment.  See

Unmarked Exhibit to Pls.' Mtn.  The Plaintiffs did not accept this offer.  Rather,

they filed a second action in the state court on January 20, 2012, this time against

the Gigliottis seeking to pierce the corporate veil.  However, this lawsuit was

stayed by the Debtors' bankruptcy filings in this court.  AC at 6.

_____

[6]  Attorneys for Gigliotti Avignion (Archer & Griener) sent a letter to the Plaintiffs stating, in
relevant portion, "You have not made any of the selections under the time frames required under the
referenced Agreement nor otherwise performed your obligations thereunder.  This letter shall constitute
notice pursuant to subparagraph (v) under the "Default" paragraph of the Agreement pursuant to which
you shall have 10 days to make your selections or otherwise cure your default of performance under the
Agreement.  Pursuant to the Agreement, in the event of a default, Gigliotti is entitled to retain the
Deposit. . . ."  Pls.' Mtn at 9.

[7]  The suit is Black v. Gigliotti Avignon Assoc., L.P., Doc. No. 05-08777.

6

### III. The Parties' Arguments and Clarification of the Issues

Before discussing the substance of the law and how it applies in this matter, it is important to make clear what the determinative issues are. The Amended Complaint's threshold cause of action is piercing the corporate veil, *i.e.* the Plaintiffs seek to disregard the corporate formality and structure of Gigliotti Avignon - the only Defendant in the State Court Action - and impose liability on the Debtor Defendants for the State Court Judgment. If the Plaintiffs are successful in piercing the corporate veil and imposing liability on the Defendants, then (and only then) will the Court need to determine Counts II and III of the Amended Complaint - whether or not the debt for the State Court Judgment is dischargeable in the Debtors' bankruptcies pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).

The Plaintiffs, both in their pleadings and in oral argument at the October Hearing, obfuscate these relatively straightforward issues by introducing a host of additional allegations and theories. For example, the Plaintiffs accuse the Debtors of pursuing fraudulent litigation against them, of being liable under Pennsylvania's participation theory doctrine, of mishandling their discovery requests, of being liable under theories of *res judicata* and or *res ipsa loquitur*, and of theft and conversion. See generally Pls.' Mtn. While several of the Plaintiffs' arguments are addressed in detail below, it is important to remember that, given the causes of action stated in the Amended Complaint, the instructive

7

matter before the Court is whether the corporate veil of Gigliotti Avignon should be pierced in order to impose liability on the Defendants for the State Court Judgment.

For their part, the Defendants argue that the testimony and evidence on record show that Gigliotti Avignon was sufficiently capitalized and that there is no indication that the Defendants siphoned any funds or intertwined their assets with the company.  See generally, Defs.' Mtn. at 16-17.  In sum, the Defendants assert that there is no evidence to support a theory of piercing the corporate veil and place the burden on the Plaintiffs to show why their claim should prevail.

### IV. Legal Standards

### A.  Summary Judgment Standard

Summary judgment is appropriate "only where the record 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (quoting Fed. R. Civ. P.56(c)).  A genuine issue of fact exists when a trier of fact, viewing the record as a whole, can rationally find in favor of the non-moving party in light of the burden of proof.  Doe v. Abington Friends School, 480 F.3d 252, 256 (3d Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986)).  The substantive law will determine which facts are material.  Anderson, 477 U.S. at 248.

8

The non moving party must show where in the record there exists a genuine dispute over a material fact.  Anderson 477 U.S. at 248.  Where the movant has the burden of proof at trial, the movant must show that no reasonable jury could find for the non-moving party, In re Universal Marketing, Inc., 481 B.R. 318, 324 (Bankr. E.D. Pa. 2012) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)), and that enough evidence exists to entitle it to a directed verdict.  In re Jackson, 453 B.R. 789, 795-796 (Bankr. E.D. Pa. 2011) (citing Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992)).  Where the movant does not have the burden, the movant must demonstrate the absence of a genuine material issue of fact, but is not required to support the motion with affidavits or other materials that disprove the assertions of the moving party.  The movant may assert that the party with the burden has not come forward with sufficient evidence to support its claim(s).  In re Jackson, 453 B.R. at 795 (citing Celotex, 477 U.S. at 323); In re Sabertooth, LLC, 443 B.R. 671, 689 (Bankr. E.D. Pa. 2011).

Cross motions for summary judgment are simply "claim[s] by each side that it alone is entitled to summary judgment," and although "inherently contradictory," rejection of one motion does not necessarily justify the other motion.  Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).  Thus, the standard for granting summary judgment in matters with cross motions pending - as here - is the same as in cases with only one motion for summary judgment filed, Lawrence

9

v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); the court must look at each

party's motion individually.  Each party bears its own respective burdens pursuant

to the law cited above.  King v. Twp. of East Lampeter, 17 F. Supp. 2d 394, 412

(E.D. Pa. 1998), aff'd 182 F.3d 903 (3d Cir. 1999).

## B.  Standard for Piercing the Corporate Veil

In general, "a shareholder is not personally liable to perform corporate

obligations."  Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-1521

(3d. Cir. 1994).  Piercing the corporate veil is an equitable remedy whereby "a

court disregards the existence of the corporation to make the corporation's

individual principals and their personal assets liable for the debts of the

corporation."  In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999) (internal quotation

and citation omitted).[8]  The corporate veil is pierced only when it is determined

that the corporation is "an artifice and a sham to execute illegitimate purposes

and [an] abuse of the corporate fiction and immunity that it carries."  Kaplan, 19

F.3d at 1521 (internal quotation and citations omitted).  The doctrine allows a

litigant to charge a person or entity controlling a corporation with "derivative

liability."  U.S. v. Bestfoods, 524 U.S. 51, 64 (1998).

Because piercing the veil takes the extreme step of disregarding the formal

structure of the corporation, there is a strong presumption against imposing such

---

[8]   Piercing the corporate veil may be imposed on limited liability companies; Gigliotti Avignon is an
LLP.  In re Kitchin, 445 B.R. 472, 481 (Bankr. E.D. Pa. 2010).

liability.  See, e.g., Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879,

886 (3d Cir. 1984) (noting that piercing the corporate veil requires a finding of

"specific, unusual circumstances."); Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir.

1967) (same);  In re LMcD, LLC v. McDonald, 405 B.R. 555, 560 (Bankr. M.D.

Pa. 2009) (noting presumption against) (citing Lumax Indus., Inc., v. Aultman,

543 Pa. 38, 41, 669 A.2d 893, 895 (1995));

Courts in the Third Circuit look at the following factors in determining

whether to pierce the corporate veil:

> gross undercapitalization, failure to observe corporate
> formalities, nonpayment of dividends, insolvency of
> debtor corporation, siphoning of funds from the debtor
> corporation by the dominant stockholder, nonfunctioning
> of officers and directors, absence of corporate records,
> and whether the corporation is merely a facade for the
> operations of the dominant stockholder.

Trs. of the Nat'l Elevator Ind. Pension, Health Benefit and Educ. Funds v. Lutyk,

332 F.3d 188, 194 (3d Cir. 2003) (citation omitted); Pearson v. Component Tech.

Corp., 247 F.3d 471, 485 (3d Cir. 2001)) (the inquiry is whether "the debtor

corporation is little more than a legal fiction").  See also In re Jamuna Real

Estate, LLC, 445 B.R. 490, 502 (Bankr. E.D. Pa. 2010) ("In essence, what these

factors boil down to is the exercise of control by the individuals over the corporate

entity . . . this domination must be complete and must have been exercised for

the individual's personal benefit . . . courts are basically concerned with . . .

ascertaining if the corporate form is a sham. . . . ") (citations omitted).

11

It is true, as the Plaintiffs point out, that courts consider overall equitable

principles when determining whether the corporate veil may be pierced.  See e.g.

Oldcastle Precast, Inc. v. VPMC, Ltd., 2013 WL 1952090, at *15 (E.D. Pa.

May 13, 2013) (noting that the veil may be pierced when "necessary to avoid

injustice." ) (quoting Rinck v. Rinck, 363 Pa. Super. 593, 526 A.2d 1221,1223

(Pa.Super. Ct. 1987)); Regan v. TriCounty Excavating, Inc., 62 F.3d 501, 509 (3d

Cir. 1995) ("The legal fiction of a separate corporate entity was designed to serve

convenience and justice . . . and will be disregarded whenever justice or public

policy demand. . . .") (quoting Ahsley v. Ashley, 393 A.2d 637, 641 (1978)).

Nonetheless, as the Third circuit noted in In re Blatstein:

> [not] every disregard of corporate formalities or failure to
> maintain corporate records justifies piercing the
> corporate veil.  That remedy is available only if it is also
> shown that a corporation's affairs and personnel were
> manipulated to such an extent that it became nothing
> more than a sham used to disguise the alter ego's use
> of its assets for his own benefit in fraud of its creditors.
> In short, the evidence must show that the corporation's
> owners abused the legal separation of a corporation
> from its owners and used the corporation for illegitimate
> purposes.

192 F.3d 88, 100 (3d Cir. 1999) (citation omitted and emphasis added) (refusing

to pierce the corporate veil upon a finding that the Debtors did uphold the

corporate form sufficiently, even where they were not run as strictly separate

entities (p.101)).  See also Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145,

150 (3d Cir. 1988) (stating that only after there has been a finding of dominance -

*i.e.* that the corporate formality does not exist - does one reach the fraud or

injustice issue and noting that "evasion of tort liability has never, in itself, been

sufficient basis to disregard corporate separateness").[9]

# V. Discussion

## A.  No Material Facts

Summary judgment is appropriate against a party who bears the burden of

proof at trial and who fails to produce evidence of an essential element of its

cause of action.  The Supreme Court put forth this principle in <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 322-323 (1986):

> The plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery
> and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an
> element essential to that party's case, and on which that
> party will bear the burden of proof at trial.  In such a
> situation, there can be 'no genuine issue as to any
> material fact,' since a complete failure of proof
> concerning an essential element of the nonmoving
> party's case necessarily renders all other facts
> immaterial.  The moving party is 'entitled to a judgment
> as a matter of law' because the nonmoving party has
> failed to make a sufficient showing on an essential
> element of her case with respect to which she has the
> burden of proof.

Judge Frank recently reiterated this principle: "[t]o be blunt, the 'appropriate time'

for demonstrating that there is evidence that supports every element of each of

---

[9] <u>Craig</u> was decided on New Jersey law; however, the Court noted that "New Jersey is . . .  in line
with the approach taken generally on this issue."  843 F.3d at 149.

the [Plaintiff's] claim (in response to the contention that no such evidence exists)

is now, at summary judgment."  In re Polichuk, --- B.R.---, 2014 WL 766648, at *8

(Bankr. E.D. Pa. Feb. 27, 2014).

Summary judgment for the Defendants is appropriate here because the

Plaintiffs, who bear the burden of proof at trial, see Guzzi v. Morano, 2013 WL

4042511, at *7 (E.D. Pa. Aug. 8, 2013),[10] have failed to offer sufficient evidence

supporting their claim that the corporate veil should be pierced so that Ronald

and John may be held liable for the debt of Gigliotti Avignon.

Of the numerous submissions made by the Plaintiffs in connection with

their Motion, the only documents which relate directly to the operation of Gigliotti

Avignon are the company's escrow account statements.  See doc. 48-7

(unmarked exhibit, attached to Pls.' Mtn) and doc. #59 (designed documents

submitted by Plaintiffs) (collectively, the "Escrow Statements").  These records

detail the transfer of funds into and out of Gigliotti Avignon's bank account.  The

Escrow Statements, dated between June 30, 2003 and August 31, 2004, show

that certain months' large deposits were followed by large withdrawals of nearly

the equivalent amount.  For example, in June 2003, the total deposits to Gigliotti

Avignon's account were $296,410.24 and the same month Gigliotti Avignon

withdrew $309,000.  Similarly, in August 2003, the deposits made were

$268,165.99 and the total withdrawals by the company were $270,000.

---

[10] Meeting this burden is "notoriously difficult for plaintiffs."  Guzzi, 2013 WL 4042511, at *7
(quoting Pearson v. Component Tech. Corp., 247 F.2d 471, 485 (3d Cir. 2001)).

The Escrow Statements show that, on more than one occasion, a large
sum was transferred out of the account after a large deposit was transferred in.
See Escrow Statements dated June 30, 2003, August 31, 2003, and April 30,
2004.  The Plaintiffs would have us infer from this information alone not only that
Gigliotti Avignon has embezzled and stolen funds, see Transcript of the October
Hearing - doc. #66, hereinafter "Tr." - at 10, but also that the company has a
"felonious intent" and has breached its fiduciary duty to the Defendants.  Tr. at 5,
27 (quote at 27).

We cannot draw such conclusions from the facts presented, which are
entirely consistent with a normally functioning corporation.  The Plaintiffs offered
no testimony or evidence regarding the placement or use of the withdrawn
money, nor regarding who withdrew the funds in the first place.  Moreover, there
is no evidence regarding whether this was the regular course of doing business
or was an unusual occurrence.  How do we know that these funds were not
invested back into the corporation, used to pay company debt, or placed in a
different corporate account?  The Plaintiffs infer a cynical, even criminal, intent
and outcome from the fact that sometimes large withdrawals were made, yet fail
to offer supporting evidence for their conclusions.

Critically, the Escrow Statements do not provide proof of gross-
undercapitalization, failure to observe corporate formalities, non-payment of
dividends, siphoning of funds, absence of corporate records, or any of the other

factors to which a court must look in order to determine that the corporate veil

should be pierced.  See Guzzi v. Morano, 2013 WL 4042511, at *8 (E.D. Pa.

Aug. 8, 2013) ("Plaintiff has failed to establish any necessity for the Court to take

the disfavored step of piercing the corporate veil.")  The Plaintiffs have simply not

offered the Court any reason to believe that Gigliotti Avignon operated as a sham

for the benefit of the Gigliottis.  For these reasons, and because the Plaintiffs

provide no other factual support for this threshold cause of action, summary

judgment for the Defendants is appropriate.[11]

## B.  Participation Doctrine

Perhaps sensing the weakness of their piercing the corporate veil analysis,

the Plaintiffs seek to hold the Gigliottis personally liable for the damages caused

by Gigliotti Avignon pursuant to Pennsylvania's participation doctrine.  Pls.' Mtn at

16; Reply at 4.

The participation doctrine is "a theory which imposes personal liability on

corporate officers or shareholders where they have personally taken part in the

actions of the corporation."  OldCastle Precast, Inc. v. VPMC, Ltd., 2013 WL

1952090, at *14 (E.D. Pa. May 13, 2013) (quoting First Realvest, Inc. v. Avery

Builders, Inc., 410 Pa. Super. 572, 600 A.2d 601, 604 (Pa. Super. 1991)).  See

also Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621 (1983) ("an officer of a

---

[11] The Plaintiffs' Motion to Compel acknowledges the lack of supporting evidence while seeking to blame the Defendants for the insufficiency.  For the reasons stated in the Order denying the Motion for Reconsideration of the Denial of the Motion to Compel (doc. #84), however, the Plaintiffs have no one but themselves to blame for the lack of appropriate prosecution of this adversary proceeding.

corporation who takes part in the commission of a tort by the corporation is personally liable therefor;"); <u>Guzzi v. Morano</u>, 2013 WL 4042511, at *9 (E.D. Pa. Aug. 8, 2013) ("[a] corporate officer can be held personally liable for a tort committed by the corporation when [he] or she is sufficiently involved in the commission of the tort.") (citations omitted) (finding no merit to the participation theory where plaintiff offered not "an iota of evidence that [defendant] personally or individually promised [plaintiff] anything"); <u>Shay v. Flight C. Helicopter Servs., Inc.</u>, 822 A.2d 1, 17 (Pa. Super. Ct. 2003) ("To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.* the improper performance of an act.") (citations and internal quotations omitted).

The Plaintiffs cannot prevail under the Pennsylvania participation doctrine for at least three reasons.  First, the Blacks offer no evidence that the Defendants, Ronald and John, directly engaged in tortious acts or committed malfeasance.  The Plaintiffs ask the Court to "infer" that the Defendants converted funds, for example, merely because money is missing that was deposited to the Defendants' company.  Pls.' Mtn at 17.  Such simple logic does not satisfy the Plaintiffs burden to prove the elements of this tort by a preponderance of the evidence.  <u>See</u> <u>In re Lewis</u>, 478 B.R. 645, 668 (Bankr. E.D.

Pa. 2012) (citation omitted).[12]

Second, and perhaps even more fundamental, a cause of action for liability under the participation theory was not pled in the Amended Complaint.  Contrary to the contention of the Plaintiffs, piercing the corporate veil (which was pled in the AC) and the participation doctrine are not "near twins" and a party may not substitute one for the other at its convenience.  Reply at 4.  The Supreme Court of Pennsylvania has explained the difference between piercing the corporate veil and the participation theory:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation.  Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore its acts are truly his.  Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner.  Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer.  Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621 (1983) (citation omitted and emphasis added).  See also, In re Kitchin, 445 B.R. 472, 478 (Bankr. E.D. Pa. 2010) ("Participation liability is a separate and distinct basis of liability from alter ego liability") (citing Wicks).

---

[12] Nor have the Plaintiffs discussed, much less satisfied, the three elements necessary to prove conversion: (1) the deprivation of another's right of property, or use of  possession of a chattel, or other interference therewith; (2) without the owner's consent; and (3) without legal justification."  Lewis, 475 B.R. at 668 (citations omitted).

Third, the Plaintiffs are precluded from seeking the cause of action for the

underlying tort necessary to succeed under the participation theory by the Court's

ruling on the Defendants' Motion to Dismiss.  <u>See</u> Order, doc. #15 (the "Dismissal

Order").  While the Dismissal Order did not dismiss the initial Complaint with

prejudice, it did set forth the precise three grounds on which the Amended

Complaint could be filed, namely: 1) a cause of action for enforcing the State

Court Judgment based on a theory of piercing the corporate veil; 2) a claim for

nondischargeability based on §523(a)(2); and 3) a claim for nondischargeability

based on §523(a)(4).  Dismissal Order at 2.  These are the exact counts named

in the Amended Complaint.  The Plaintiffs were thus not permitted to proceed on

the common law tort counts named in the initial Complaint, nor was a

participation theory enumerated as one of the causes of action on which they

were allowed to proceed.

By now rearguing the merits of the tolling of the statute of limitations, the

Plaintiffs appear to be revisiting the issues addressed by the Motion to Dismiss,

namely whether they may plead causes of action for various torts against the

Defendants.  Reply at 5-6.  Although this matter was decided over a year ago by

the Dismissal Order and its accompanying hearing, for the sake of clarity and

finality, the Court will briefly revisit this issue as well.

In addition to a cause of action for piercing the corporate veil, the original

Complaint filed by the Plaintiffs pled six causes of action: violation of the PA

Uniform Transfer Act, fraud, violations of the Unfair Trade Practice & Consumer

Protection Law, conversion or fraudulent conversion, breach of fiduciary duty, and

civil conspiracy.  Doc. #1.  The statute of limitations on these causes of action

range from two to six years.  See 12 Pa. C.S.A. §5109, 42 Pa. C.S.A.

§ 5524(3),(7), §5527(b).  One of the critical issues presented by the Defendants'

Motion to Dismiss was what date - known as the "accrual date" - should be used

to calculate the statute of limitations for the causes of actions named in the

Complaint.

  According to the Third Circuit, the "accrual date" for determining the statute

of limitations of a cause of action "occurs at the moment at which each of its

component elements has come into being as a matter of objective reality, such

that an attorney with knowledge of all the facts could get it past a motion to

dismiss for failure to state a claim."  William A. Graham Co. v. Haughey, 646 F.3d

138, 150 (3d Cir. 2011) ("accrual happens at the moment when events fulfilling all

the elements of a cause of action have transpired") (Id. at 149).  See also Danysh

v. Eli Lilly and Co., 461 Fed.Appx. 75, 2012 WL 272883, at *2 (3d Cir. Jan. 31,

2012) (not precedential); Fine v. Checcio, D.D.S., 582 Pa. 253, 266, 870 A.2d

850, 857 (Pa. 2005) ("In Pennsylvania, a cause of action accrues when the

plaintiff could have first maintained the action to a successful conclusion . . . the

statute of limitations begins to run as soon as the right to institute and maintain a

suit arises.") (citations omitted).  Under federal law, a cause of action accrues,

20

and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." Whiteford v. PA, 2012 WL 4076190, at *7 (W.D. Pa. Aug. 13, 2012) (citations omitted).

The Plaintiffs argue that the accrual date occurred not in 2004 or 2005, when the Property was constructed and the deposit was made by the Plaintiffs, but rather six years later, on January 21, 2011, when the letter stating that Gigliotti Avignon was insolvent (the "Insolvency Letter") was presented to them. Reply at 5. This argument is not logical. Pursuant to the law cited above, it is apparent that accrual, for purposes of the running of the statute of limitations, happens when a cause of action comes into being and a litigant has the right and power to maintain a lawsuit. Here, the accrual occurred in 2005 because the Plaintiffs filed a lawsuit related to this very cause of action against Gigliotti Avignon in state court on December 8, 2005. Plaintiffs may not, once they realize that the pursued defendant is insolvent, seek to cry foul by alleging that the accrual date is other than it was. "[F]or purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined." Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1041 (Pa. Super. 1999) ("It is hornbook law that a statute of limitations begins to run as soon as the right to institute suit arises) (Id. at 1042).[13] Therefore, the Blacks may not replead the various state law tort causes of action that were

---

[13] Nor have Plaintiffs shown "extraordinary circumstances" necessary to equitably toll the statute of limitations. Pabon v. Mahoney, 654 F.3d 385, 399 (3d Cir. 2011).

dismissed in their initial Complaint.  These causes of action are barred by the

statute of limitations.  Such torts would be a necessary basis upon which to frame

a participation doctrine pleading.

As a result of this limitation, and for the other reasons discussed above,

Plaintiffs desire for relief under Pennsylvania's participation doctrine is misplaced.

## C. *Res Ipsa Loquitur* and *Res Judicata*

Finally, the Plaintiffs appeal to the Court's sense of equity, arguing that

they should be able to recover because the facts reveal or at least strongly imply

that the Defendants absconded with the Plaintiffs' money.  As the Plaintiffs

counsel summarized at the October Hearing:

> The facts speak for themselves in saying that the
> corporation was used as a sham to carry out the theft of
> my client's [sic] money.  The money was there.  It
> disappears.  My clients come to get it.  They're told that
> it no longer exists.  Who controls the entity?  The
> defendants.  They admit that.  You know, it's like going
> into a room where there was a box of gold, only three
> people go into the room, and when the next person goes
> into the room and the gold is gone; well, then you
> conclude that the three people that entered the room
> took the gold.

This argument has a certain appeal.  There is, after all, no question that the

Plaintiffs have incurred a financial loss and it has already been determined by the

State Court that the Defendants' corporation is responsible for that loss.  The

Court is certainly sympathetic to the extensive damages suffered by the Blacks,

particularly because such loss was suffered in conjunction with the purchase of

22

their personal residence.  Nonetheless, upon an analysis of the facts and law, the

Plaintiffs equitable argument - which is based on the theories of *res judicata* and

*res ipsa loquitur* - does not provide a basis on which relief may be granted.

As a preliminary matter, it must be remembered that while bankruptcy

courts may, in fact, take equity into consideration when rendering decisions, "[t]he

bankruptcy court is only a court of equity *within the confines of the Bankruptcy*

*Code*."  In re Roemmele, 466 B.R. 706, 714 (Bankr. E.D. Pa. 2012) (emphasis

added) (citing In re Combustion Eng'g, Inc., 391 F. 3d 190, 236 (3d Cir. 2004)

("the general grant of power contained in §105(a) cannot trump specific

provisions of the Bankruptcy Code, and must be exercised within the parameters

of the Code itself.")).  The Court may not make a determination of

nondischargeability until it has decided that a debt is owed by the Debtors to the

Plaintiffs.  That determination requires a basis on which to pierce the corporate

veil.  Neither a theory of *res judicata* nor that of *res ipsa loquitur* provides such a

basis.

## D.  *Res judicata*

The doctrine of *res judicata* "protect[s] litigants from the burden of

relitigating an identical issue with the same party or his privy and . . . promot[es]

judicial economy by preventing needless litigation."  Parklane Hosiery Co. v.

Shore, 439 U.S. 322, 327, 99 S.Ct. 645 (1979); see also Teri Woods

Publ'g., L.L.C. v. Williams, 2013 WL 5777151 (E.D. PA. Oct. 25, 2013).  A party

23

seeking to invoke *res judicata* must establish the following three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privities and (3) a subsequent suit based on the same cause of action." Marmon Coal Co. v. Director, Office of Workers Compensation Programs, 726 F.3d 387, 394 (3d Cir. 2013) (citing Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010)).  Given that the Blacks obtained a judgment in a prior state court suit against the Defendants' company based on the same set of factual circumstances, these elements appear to exist here.

However, the Plaintiffs ignore the critical fact that *res judicata* cannot be used as a premise to impose liability under a theory of piercing the corporate veil. See, e.g, Burberry, Ltd., v. Horowitz, 534 Fed. Appx. 41 (2d. Cir. August 28, 2013) (distinguishing the doctrines of *res judicata* and piercing the corporate veil and holding that a shareholder who is in privity with a corporation for purposes of *res judicata* is not necessary liable for a prior judgment against the company under a theory of piercing the corporate veil); Careccia v. Macrae, 2005 WL 1711156, at *4 (E.D.N.Y. July 19, 2005) ("While defendants invoke the *res judicata* standard and argue that it applies to bar actions like the instant enforcement action, defendants have cited no case for the proposition that veil-piercing is the kind of claim that is subject to preclusion doctrines.  The weight of authority suggests that it is not.").  Plaintiffs cite no law to the contrary, nor does their *res judicata* analysis in any way take their piercing the corporate veil cause

24

of action into account.  For these reasons, liability may not be imposed due to the application of the principles of *res judicata*.

### E.  *Res Ipsa Loquitur*

Equally flawed is the Plaintiffs reliance on the doctrine of *res ipsa loquitur*. *Res ipsa loquitur* governs the availability of evidence; it is "merely a recognition that circumstantial evidence may be appropriate and adequate proof in a negligence action."  Taylor v. Nat'l R.R.Passenger Corp., 310 F. Supp. 2d 727, 733 (E.D. Pa. 2004) (citing Gilbert v. Korvette, Inc., 457 Pa. 602, 611, 327 A.2d 94, 99 (1974)).  The doctrine in no way shifts the burden from the Plaintiff.  Id. See also Cmty. Preschool & Nursery of E. Liberty, LLC v. Tri-State Realty, Inc., 717 F.Supp. 2d 482, 291 (W.D. Pa. 2010) ("*res ipsa loquitur* applies when there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury . . .") (citations omitted); Cox v. Wal-Mart Stores E., L.P., 2008 WL 4072804, at *5 (E.D. Pa. Aug. 26, 2008) (emphasis added) ("In certain *negligence* cases, a plaintiff may prove *negligence* by applying the principle of *res ipsa loquitor* [sic], which translates to "the thing speaks for itself."); Restatement (second) of Torts §328D.

The Blacks argue that their *res ipsa loquitur* theory is winning because "Defendants had exclusive control of Gigliotti Avignon, by which the injury was effected on Plaintiffs . . . and Debtor Defendants make no effort to address or

explain what happened to the monies Plaintiffs' entrusted to them."  Pls.' Mtn

at 12.  This argument is untenable for two equally fatal reasons.  First, *res ipsa*

*loquitur* is an evidentiary tool used in negligence actions; the Plaintiffs cite no law

showing that the doctrine satisfies the stringent evidentiary burdens necessary to

a cause of action for piercing the corporate veil.  The Court was unable to locate

any such authority.

Second, even if the Court were to take the precedential step of applying *res*

*ipsa loquitur* to the Plaintiffs' piercing the corporate veil theory, the Blacks have

not demonstrated that the circumstantial facts have met their strict burden of

proof.  That the Defendants were shareholders of a company at a time when the

Plaintiffs' deposit funds went missing may be frustrating and suspicious, but this

fact alone does not warrant the Plaintiffs' reaching into the Defendants' pockets

by way of a piercing the corporate veil cause of action whose standard - as

discussed above - is notoriously difficult to meet.  The Court, therefore, rejects

the Blacks *res ipsa loquitur* argument.

## VI. Conclusion

The Plaintiffs, who have the burden of proof on the theory of piercing the

corporate veil, have failed to offer sustainable evidence to support this cause of

action.  Therefore, summary judgment for the Defendants is appropriate.  Further,

because the Plaintiffs cannot demonstrate that a debt is owed to them (by

successfully piercing the corporate veil and imposing liability on the Defendants

for the State Court Judgment), the Plaintiffs causes of actions for

nondischargeability pursuant to 11 U.S.C. § 523(a)(2) and 523(a)(4) are moot.

See e.g., In re August, 448 B.R. 331, 346 (Bankr. E.D. Pa. 2011) ("every

dischargeability proceeding involves two separate inquiries.  First, does the

creditor hold an enforceable obligation under non-bankruptcy law.  Second, is the

debt non-dischargeable under bankruptcy law. . . .  In the absence of an

enforceable obligation, there is no 'debt' that can be non-dischargeable."

(citations omitted).

      An appropriate order will follow.

DATED:  March 25, 2014.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

**Plaintiff's Counsel**
David F. Gould, III, Esquire
Gould Law Associates, PC
20 S. Pine Street
Doylestown, PA 18901

**Defendant's Counsel**
Robert W. Seitzer, Esquire
Aris J. Karalis, Esquire
Maschmeyer Karalis P.C.
1900 Spruce Street
Philadelphia, PA 19103

27